```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**SHIRLEAN MEADE and ELMER MEADE,**

      **Plaintiffs,**

v.                                    Civil Action No. 2:09-cv-00388

**DEIDRE E. PARSLEY, D.O.; WYETH, INC., doing business as Wyeth; SCHWARZ PHARMA, INC.; PLIVA, INC.; and JOHN DOE DEFENDANTS #1-6**

      **Defendants.**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is plaintiffs' motion to stay all proceedings, to continue the trial setting, and for leave to conduct additional discovery, filed March 27, 2011.

I.

This action concerns plaintiff Shirlean Meade's use of the drug metoclopramide and her injuries allegedly resulting therefrom. In support of their motion to stay, to continue, and for additional discovery, plaintiffs assert two grounds. First, they contend that a set of consolidated cases currently pending before the United States Supreme Court, which involve tort claims against metoclopramide manufacturers, will necessarily affect the parties' posture in this case. See <u>PLIVA, Inc. v. Mensing</u>, No.

09-993, consolidated with <u>Actavis, Inc. v. Demahy</u>, No. 09-1501; <u>Actavis Elizabeth, LLC v. Mensing</u>, No. 09-1039, 131 S. Ct. 817 (2010).  Second, plaintiffs point out that former defendant PLIVA, Inc. ("PLIVA")[1] recently "revealed that the label accompanying its [metoclopramide] products after 2004 (and during the relevant time period in the instant case) did not in fact reflect the 2004 label changes made by the brand-name manufacturer of [metoclopramide], meaning that all parties in the instant suit conducted discovery under false assumptions." (Pls.' Mot. 2; <u>see also id.</u>, Ex. 3, Letter from PLIVA's counsel dated March 11, 2011).  Based on the foregoing developments, plaintiffs ask the court to (1) stay all proceedings pending a decision from the Supreme Court in <u>Demahy</u> and <u>Mensing</u>, and (2) thereafter enter a new scheduling order moving the trial date and allowing for additional discovery.  If the court declines to stay the action, plaintiffs alternatively urge the court to continue the scheduling order deadlines and grant additional discovery. In her response, defendant Dr. Deidre E. Parsley asserts that plaintiffs' motion should be denied because, among other things, this court has already determined that PLIVA's label had no impact on the prescribing of metoclopramide to Mrs. Meade.

---

[1]   On November 24, 2010, the court granted PLIVA's motion for summary judgment and dismissed PLIVA from this action. <u>Meade</u>, 2010 WL 4909435, at *12.

II.

A district court has broad discretion to stay an action as part of its inherent authority to manage its docket. Wince v. Easterbrooke Cell. Corp., 681 F. Supp. 2d 688, 692 (N.D. W. Va. 2010) (citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936)). Nevertheless, the court's discretion has limits. "[P]roper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance. The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983) (internal quotations and citations omitted).

District courts likewise have broad discretion in deciding whether to grant a continuance or an extension of discovery. Martel v. County of Los Angeles, 56 F.3d 993, 995 (9th Cir. 1995); see also United States v. LaRouche, 896 F.2d 815, 823 (4th Cir. 1990) (noting in criminal case that "the burdensome task of assembling a trial counsels against continuances, and, therefore, the trial courts must be granted broad discretion.").

3

It does not appear to the court that plaintiffs have offered a sufficient justification for a stay, a continuance, or additional discovery.  To begin, the consolidated cases currently pending before the U.S. Supreme Court are unlikely to have any bearing on the outcome of this litigation.  The question presented in the consolidated cases concerns whether federal law preempts state law failure to warn claims against generic drug manufacturers.[2]  The Court's resolution of this question will have no effect on plaintiffs' ordinary medical negligence claims against Dr. Parsley.  As for plaintiffs' claims against PLIVA, this court granted summary judgment as to these claims on causation grounds and did not reach the federal preemption issue.  See Meade, 2010 WL 4909435, at *12 (granting PLIVA's summary judgment motion and denying as moot PLIVA's motion to dismiss based on federal preemption).  Inasmuch as the consolidated

---

[2]  See Brief of Petitioners, PLIVA, Inc. v. Mensing, 131 S. Ct. 817 (2010) (No. 09-993), 2011 WL 219554 at *ii (framing question presented as follows: "Does the Hatch-Waxman Act preempt state-law failure-to-warn claims against the manufacturer of a generic drug whose warnings were, as the Hatch-Waxman Act and the FDA's implementing regulations expressly require, 'the same as' those the FDA approved for the product's brand-name equivalent?"); Brief of Respondents in Opp. to Petition for Writ of Cert., PLIVA, 131 S. Ct. at 817, 2010 WL 1653085 at *i (framing question presented as follows: "Whether state law products liability claims brought by injured patients against manufacturers of generic drugs are impliedly preempted by the Food, Drug and Cosmetic Act?").

appeals pending before the Supreme Court only raise the federal preemption issue, and because the resolution of that issue is immaterial to the basis on which the court dismissed PLIVA in this action, the court declines to stay this case pending a decision from the Supreme Court.

The court also does not discern how PLIVA's recent disclosure -- namely, that its drug label did not reflect the 2004 label changes of the brand name drug manufacturer -- has any relevance to this case. As Dr. Parsley correctly observes, the court's decision to grant PLIVA's summary judgment motion primarily turned on the undisputed fact that neither Dr. Parsley nor Mrs. Meade read PLIVA's drug label. Specifically, the court concluded as follows:

> In sum, plaintiff did not read the PLIVA labeling when she used metoclopramide in 2006 and 2007 and neither did Dr. Parsley. Even if PLIVA had set forth a heightened warning in its labeling, neither plaintiff nor Dr. Parsley would have seen it. And so, a stronger warning by PLIVA would not have affected the behavior of either plaintiff or Dr. Parsley. Plaintiffs have therefore failed to carry their burden of establishing proximate causation.

Meade, 2010 WL 4909435, at *10. Thus, whether PLIVA incorporated the brand name manufacturer's 2004 label changes in its own labeling is of no moment, since Mrs. Meade and Dr. Parsley never read PLIVA's labeling in the first place. It follows that

5

PLIVA's recent disclosure regarding the content of its metoclopramide labeling provides no basis for a stay, a continuance, or additional discovery.

Finally, the court notes that the scheduling order deadlines in this action have already been extended several times at the parties' request.  Interests of expediency, efficiency, and judicial economy therefore weigh heavily in favor of denying plaintiffs' motion to modify the scheduling order yet again.

In view of the foregoing, the court concludes that plaintiffs have failed to offer reasons justifying a stay, a continuance, or additional discovery.  It is accordingly ORDERED that plaintiffs' motion be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: April 15, 2011

_____
John T. Copenhaver, Jr.
United States District Judge

6